# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

SHAWONDASEE DAWN SMITH, )
)
PLAINTIFF, )
)
vs. ) CASE NO. 10-CV-629-FHM
)
MICHAEL J. ASTRUE, )
Commissioner of the )
Social Security Administration, )
)
DEFENDANT. )

## OPINION AND ORDER

Plaintiff, Shawondasee Dawn Smith, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held December 12, 2008. By decision dated May 21, 2009, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on August 5, 2010. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 34 years old at the time of the hearing. [R. 25].  She claims to have been unable to work since October 15, 2005, due to anxiety, spastic colon and kidneys, stiffness in the back and knees, diabetes, numbness and sensitivity in her feet, adrenal glands problems, asthma, frequent urinary tract infections, arthritis in the knees, degenerative joint disease, irritable bowel syndrome and kidney stones. [R. 31-39]. The ALJ determined that Plaintiff has severe impairments consisting of hypertension, obesity, diabetes, depression, anxiety, urinary tract infections, problems with kidneys, stomach, knees, thyroid, adrenal glands, back and feet [R. 13], but that she retains the residual functional capacity (RFC) to perform sedentary work activity with avoidance of dust, fumes, gases, concentrated; would need easy access to restrooms and slight limitation in contact with public, co-workers and supervisors. [R. 16].  Based upon the testimony of a vocational expert (VE), the ALJ found that Plaintiff could not return to her past relevant work but that there are other jobs available in the economy in significant numbers that Plaintiff could perform with that RFC. [R.17-18]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 19]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729,

2

731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts a single allegation of error: that the ALJ failed to properly discuss the medical evidence. [Plaintiff's Brief, Dkt. 16, p. 2]. Specifically, Plaintiff contends the ALJ's decision to not give considerable weight to the low GAF scores[2] recorded by Plaintiff's counselors at Grand Lake Mental Health Center was reversible error. For the reasons discussed below, the Court affirms the decision of the Commissioner.

Because Plaintiff's challenge to the ALJ's decision is limited to his consideration of her mental treatment records, only those records are discussed herein, though the entire record has been reviewed.[3] As Plaintiff has acknowledged, the ALJ summarized and discussed Plaintiff's records from Grand Lake Mental Health Center where she was treated from August 2007 to November 2008. [R. 14, 17].

When Plaintiff first presented for treatment at Grand Lake Mental Health Center, she complained of restlessness, loss of concentration, very low self esteem, feeling worthless, altered sleep and eating patterns and that she had no support base. [R. 382-388]. She was diagnosed with Major Depression, recurrent, moderate, and Generalized Anxiety and she was assigned a GAF score of 43. [R. 388]. Her treatment plan was focused upon

---

[2] A global assessment of functioning score "is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. A GAF rating of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." A GAF rating of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.,* 34, (DSM-IV-TR (4th ed. 2000)).

[3] The record contains two pages that appear to belong to a person other than Plaintiff. [Dt. 171-172].

developing coping skills for her pain and physical problems with medications, individual therapy and rehabilitation. *Id.* She was prescribed Paxil[4] and underwent counseling on a twice-monthly basis for the following year. [R. 367-381, 450-460, 574-586]. During that time, she repeatedly referred to her problems with depression and anxiety as related to, exacerbated by and/or caused by her physical problems. *Id.* On December 20, 2007, she reported the Paxil was not working and Cymbalta was substituted. [R. 457]. By January 17, 2008, counseling notes reported Plaintiff had a "nice response to Cymbalta" and that she wanted to come for treatment every other month instead of monthly. [R. 455]. After Plaintiff started treatment at OU Physicians, she reported feeling more positive about her "medical situation" which made her depression better and her moods better. [R. 600]. On September 4, 2008, Plaintiff had completed her one-year treatment plan, her GAF score was increased to 45 and a new plan was formulated which set goals for another year. [R. 579-588]. At that time she reported having more good days than bad ones. [R. 590]. Her progress in counseling paralleled her positive results from treatment at OU for her physical ailments and, in October 2008, Plaintiff reported she was beginning to feel better but lacked motivation. [R. 577]. On November 20, 2008, in the final treatment report from Grand Lake Mental Health Center appearing in the record, Plaintiff said: "I feel so good today that my moods are better too." [R. 574].

The ALJ concluded the GAF ratings were inconsistent with the information in the treatment records, Plaintiff's "fairly active life style" and the medical evidence in the record from OU. [R. 17]. He discounted the GAF scores but gave "considerable weight" to the

---

[4] The record indicates Plaintiff was previously prescribed Paxil by her general health care provider and, when she could not afford refills, was given samples. [R. 296, 327, 423, 426, 430, 442].

treatment records from Grand Lake Mental Health Center. [R. 17]. Plaintiff complains that this determination was improper.

As previously noted, the axial system of evaluation represented by GAF scores helps the clinician to comprehensively and systematically evaluate a client. *See* DSM-IV-TR, at 27. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 32. However, the GAF is not an absolute determiner of ability to work. *See Crawford v. Massanari*, 2001 WL 1943879 (N.D. Okla. Aug. 24, 2001) (unpublished); *Stalvey v. Apfel*, 242 F.3d 390, 2001 WL 50747 (10th Cir. 1999) (unpublished); *Seymore v. Apfel*, 131 F.3d 152, 1997 WL 744386 (10th Cir. 1997) (unpublished).

The ALJ properly considered the Grand Lake Mental Health Center GAF scores and concluded that they were inconsistent with the other evidence in the record. That evidence included the treatment records from the same facility, treatment records from other health care facilities and Plaintiff's own testimony regarding her ability to perform work activities [*see* R. 41-45: can go to store; had no trouble working as crew member at McDonald's; no trouble interacting on telephone with customers; can perform household chores; visits with friends and family; going to genealogy meeting at public library]. Moreover, the GAF scores at issue were not linked to any work-related limitations identified in the treatment records. The ALJ gave specific reasons for not accepting the GAF scores of 43 and 45 and there is ample evidence in the record to support the ALJ's finding. The ALJ's RFC included restrictions to accommodate Plaintiff's claimed limitations of being in crowds of people she did not know. [R. 15-16, 41]. The ALJ's decision is supported by substantial evidence.

**Conclusion**

The ALJ's decision demonstrates that he considered all of the medical reports and other evidence in the record in his determination that Plaintiff retained the capacity to perform sedentary work activities with additional limitations including a slight limitation in contact with public, co-workers and supervisors. The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 1st day of November, 2011.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE